IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GEORGE R. TORPE, an individual,<br><br>      Plaintiff,<br>v.<br><br>AURORA LOAN SERVICES, LLC, a foreign limited liability company; AURORA BANK, FSB, a federal savings bank, as successor in interest to LEHMAN BROTHERS BANK, FSB, a federal savings bank; and JOHN DOES I-X;<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:11-cv-00971-DN<br><br>District Judge David Nuffer |

  Defendants Aurora Loan Services, LLC, and Aurora Bank, FSB (collectively, "Aurora") filed a motion for summary judgment[1] ("Motion") on Plaintiff George Torpe's ("Torpe") three causes of action. The Motion is granted because there is no genuine dispute about material facts.

## BACKGROUND

  Torpe purchased a piece of real estate and financed the purchase with a loan from Lehman Brothers Bank, FSB, to which Aurora is the legal successor in interest.[2] The resulting mortgage contract required monthly repayments.[3] Torpe attempted to modify his mortgage contract five times in order to reduce the interest rate and his payments.[4] When Torpe contacted Aurora about a loan modification, he was told that his mortgage must be two months in arrears to

---

[1] Aurora Loan Services, LLC's and Aurora Bank, FSB's Motion for Summary Judgment; Memorandum in Support (Motion), docket no. 51, filed May 9, 2014.

[2] Amended Complaint at 2–3, docket no. 38, filed October 1, 2012.

[3] *Id*. at 3.

[4] *Id*. at 4–9.

be considered.[5] Torpe did not make payments for two months.[6] Later in a phone interview after the two months had passed without making a payment, Torpe claimed Aurora told him to make approximately two months' worth of payments immediately, and then make reduced monthly payments, in order to be eligible for the modification.[7] Torpe then made reduced monthly payments while Aurora reviewed his application.[8] Aurora denied Torpe's applications four times for lack of documentation.[9] During the fifth application process, Aurora scheduled a foreclosure sale.[10] Torpe stopped making payments during the fifth application process.[11]

## UNDISPUTED FACTS[12]

1. Torpe entered into the Deed of Trust covering a condominium unit at The Lodges at Deer Valley in Park City, Utah in May 2006.

2. The Deed of Trust provides that upon the borrower's "breach of any covenant or agreement in [the Deed of Trust]" the Lender (or its successors or assigns) "may require immediate payment in full of all sums secured by th[e] [Deed of Trust]" and "may invoke the power of sale and any other remedies permitted by Applicable Law."[13] If, however, the Lender entered into a forbearance agreement, that would "not be a waiver of or preclude the exercise of

---

[5] *Id*. at 4.

[6] *Id*.

[7] *Id*.

[8] *Id*. at 5.

[9] *Id*. at 5–8.

[10] *Id*. at 12–13.

[11] Torpe Dep. 37:12-19, Nov. 8, 2013, attached as Exhibit A to Motion, docket no. 51-2.

[12] The following factual statements are taken from the Motion at 5-9. Facts footnoted with cites to Opposition have been modified to incorporate any response by Torpe. Otherwise, the facts are undisputed by Torpe. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Opposition) at 3 n.1, docket no. 54, filed June 12, 2014 ("Plaintiff responds only to the statements as to which there is a dispute and accepts the remaining statements as true, FOR PURPOSES OF THE INSTANT MOTION ONLY, and expressly does not admit them, nor that they are material to this case.").

[13] Deed of Trust § 22, attached as Exhibit B to Original Complaint found in Notice of Removal, docket no. 2-1.

any right or remedy." However, "Lender shall not be required to . . . modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower . . . ."[14]

3. Section 13 of the Deed of Trust states: "Borrower shall not be released from borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing."[15]

4. As part of the loan agreement, Torpe executed an "Affidavit of Occupancy and Financial Status." Torpe stated in that Affidavit, that "The property is or will be the Borrower's Secondary Residence. A secondary residence is a single family property that either is currently or will be occupied by at least one of the Borrowers in addition to their primary residence. It will not be income producing."[16]

5. When Torpe executed that Affidavit of Occupancy, he intended the property be both a vacation home and an investment property.

6. As part of the loan agreement, Torpe executed a "Second Home Rider," which required him to use the property as his second home and to not subject the property to a rental pool agreement.

7. Torpe entered into an agreement with a third party to manage the rental of the property.

8. In 2008 and 2009 Torpe had difficulty finding renters. Then the property management company that booked and collected rents for the property went bankrupt in June 2009. This, along with difficulties in Torpe's own business made it difficult for him to make the monthly loan payments on the condo.

---

[14] *Id.* § 12.

[15] *Id.* § 13).

[16] Affidavit of Occupancy and Financial Status § 1.2, attached as Exhibit 3 in Exhibit A to Motion, [docket no. 51-1](docket no. 51-1).

9. Torpe contacted Aurora to modify his loan. When Torpe contacted Aurora, Torpe was allegedly informed he could not be considered for a loan modification because he was currently able to make his payment. Torpe alleges that as of June 2009 Torpe had been in default for two months. He was able to pay his mortgage obligations but did not because he wanted to have a lower interest rate.

10. In June of 2009, Aurora entered into a forbearance agreement with Torpe. The forbearance agreement's terms included a provision indicating the forbearance agreement would not "constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings."[17] The forbearance agreement states "[e]xcept as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect."[18] The forbearance agreement could only be modified "by an instrument in writing."[19]

11. The forbearance agreement provides that "Tender of the last Plan payment shall not be deemed acceptance by Aurora of a workout plan or loan modification."[20]

12. Torpe applied for a loan modification, for which he was denied. Aurora's stated reason for denying the application was Torpe's failure to provide requested documentation.[21] Aurora told Torpe that he could reapply if he made a lump sum payment with the application and other payments.

13. Following the denial of the first loan modification application, Torpe had the ability to come current on the loan. Torpe applied for a second modification, which was denied.

---

[17] Forbearance Agreement at 4, § 6, attached as Exhibit B to Motion, docket no. 51-3.

[18] *Id.* § 8.

[19] *Id.* at 5, § 13.

[20] *Id.* at 7, § a.2.

[21] Opposition at 8.

Aurora's stated reason for denying Torpe's second application was a lack of documentation.[22] During this time, he had been renting out the property.

14. Following the denial of the second loan modification application, Torpe had the ability to come current on the loan. Torpe applied for a third modification, which was denied. Aurora's stated reason for denying the loan was a lack of documentation.[23]

15. Following the denial of the third loan modification application, Torpe applied for a fourth modification. Aurora's stated reason for denying the loan was a lack of documentation.[24]

16. Following the denial of the fourth loan modification application, Torpe could have made his loan payments. Torpe applied for a fifth modification, which was denied. Aurora's stated reason for denying the loan was a lack of documentation.[25]

17. When the fifth modification application concluded, Torpe could have made the loan payments but he stopped making payments on the advice of his counsel.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56 "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law."[26] When considering the motion, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to" the nonmoving party.[27] Also, "the nonmoving party must present more than a scintilla of evidence in

---

[22] *See id.*

[23] *See id.* at 9.

[24] *See id.* at 10.

[25] *See id.* at 10–11.

[26] Fed. R. Civ. P. 56(a).

[27] *Lewis v. Circuit City Stores, Inc.,* 500 F.3d 1140, 1146 (10th Cir. 2007).

favor of his position."[28] 'A genuine dispute exists only when the evidence would allow a reasonable jury to find in favor of nonmoving party.[29]

## FIRST CLAIM: BREACH OF CONTRACT

In his first cause of action, Torpe alleges Aurora breached its contract with him, as well as its duty of good faith and fair dealing.[30] Torpe alleges that Aurora entered into a contract with him by promising to consider his application in good faith and a commercially reasonable manner in exchange for Torpe's documentation and payments.[31] Torpe claims Aurora breached this contract and its duty of good faith and fair dealing in several ways: (1) Aurora failed to modify Torpe's loan; (2) Aurora rejected Torpe's applications for lack of documentation, despite Torpe's allegation that he provided complete documentation; (3) Aurora initiated the foreclosure process during the application process; and (4) Aurora's instruction to make reduced payments during the application process caused Torpe to accumulate a balance too large to pay once he was informed of the foreclosure sale.[32]

Under the Utah Statute of Frauds,[33] contracts concerning real property,[34] modifications of contracts concerning real property,[35] and modifications of contracts concerning repayment[36] are

---

[28] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kerber v. Quest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

[30] Amended Complaint at 14-15.

[31] *Id*.

[32] *Id*. at 15–16.

[33] Utah Code Ann. §§ 25-5-1 to -9.

[34] Utah Code Ann. §§ 25-5-1, -3; *see also*, *Mangelsen v. America's Servicing Co.*, No. 2:12-cv-00238-DN, 2013 WL 1870572, at *2 (D. Utah May 3, 2013) ("Contracts and agreements creating an interest in real property are void without a writing.").

[35] *Mangelsen*, 2013 WL 1870572, at *2 ("'[W]hen a contract is required to be in writing, the same requirement applies with equal force to any alteration or modification thereof.'" (quoting *Zion's Properties v. Holt*, 538 P.2d 1319, 1322 (Utah 1975))).

[36] Utah Code Ann. §§ 25-5-4(1)(f) and 25-5-4(2)(a)(i)(A)(I); *see also*, *Mangelsen*, 2013 WL 1870572, at *2.

invalid if not in written form. The alleged oral agreement that Aurora would reasonably consider or accept Torpe's application is invalid under the Utah Statute of Frauds, because it falls into one of several categories for which the statute requires a written format. Those categories include real estate contracts, modifications of real estate contracts, and modifications of repayment contracts. Torpe's conversations with Aurora took place over the phone. There is no written agreement in which Aurora promised to either modify the contract or process the application in good faith and in a commercially reasonable manner.[37]

Although Torpe responds to some facts relevant to this claim, he does not actually dispute them.[38] Consequently, there is no genuine dispute of material fact on this claim.

## SECOND CLAIM: PROMISSORY ESTOPPEL

Torpe's second claim is based on promissory estoppel. He alleges that "Defendant Aurora promised Plaintiff that it would consider his application for a loan modification in a commercially reasonable manner according to the standards of the industry, and that it would deal with him in good faith while considering that application."[39] Aurora correctly argues that Torpe provides inadequate support for the elements of his promissory estoppel claim.[40]

### Torpe Fails To Support the Element of Promissory Estoppel

The elements of promissory estoppel in Utah are:

> (1) the promisee acted with prudence and in reasonable reliance on a promise made by the promisor; (2) the promisor knew that the promisee had relied on the promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person; (3) the promisor was aware of all material facts; and (4) the promisee relied on the promise and the reliance resulted in a loss to the promisee.[41]

---

[37] Amended Complaint at 4, 5, 7, 9.

[38] Opposition at 3, 4, 6–11.

[39] Amended Complaint at 17, ¶ 39.

[40] Motion at 15.

[41] *Wendover City v. West Wendover City*, 404 F. Supp. 2d 1324, 1334 (D. Utah 2005).

Torpe does not present sufficient factual allegations to demonstrate his prudence or reasonableness in both failing to attempt to refinance the mortgage in other ways and failing to pay his balances between application periods, given that he was able to afford these payments.[42] Thus, Torpe fails to support the first element of a promissory claim. Similarly, Torpe does not adequately allege that it would have been reasonable for Aurora to expect Torpe to refrain from alternative refinancing or to pay his balances between application processes.[43] Therefore, Torpe fails to support the second element of the promissory estoppel claim.

## Aurora Has Not Established Torpe's Unclean Hands

Aurora also argues that Torpe is not entitled to relief under promissory estoppel because he has "unclean hands" because he characterized the property as a second home (rather than an investment) in the loan application and was financially able to pay the original mortgage amount.[44] According to the unclean hands doctrine, a plaintiff's misconduct related to his or her claim may justify a denial of relief for that claim.[45] The misconduct must be sufficiently related to the claim for a defendant to effectively invoke the unclean hands doctrine.[46] The misconduct is not sufficiently related when it did not put the plaintiff in a position that allowed him or her to sue the defendant.[47] The rationale behind the doctrine of unclean hands is that a person should not be able to benefit from his or her misconduct.[48]

---

[42] Torpe Dep. 25:19-21, 35:10-13, 38:2-3; Amended Complaint at 17–18.

[43] Amended Complaint at 17–18.

[44] *Id*. at 14–15.

[45] Restatement (Second) of Torts § 940 (1979).

[46] *Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004).

[47] Restatement (Second) of Torts § 940 cmt. c (1979).

[48] *Id*.

Aurora asserts Torpe described the property as a second home, which was a mischaracterization. But the mischaracterization is not sufficiently related to the claim to justify denying relief to Torpe. Torpe's claims resulted from his alleged reliance on an agreement to consider his modification application, which lead to his inability to pay.[49] Accordingly, the court declines to apply the doctrine of unclean hands in this instance.

### THIRD CLAIM: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

Torpe's last cause of action alleges breach of Aurora's duty of good faith and fair dealing in performing its contractual duties under the alleged modification application by moving forward with the foreclosure sale while his fifth application process was ongoing.[50] He alleges that through the modification process Aurora was "luring" him into creating an excessive balance by recommending he make reduced payments, after deceiving him into thinking his modification application was being considered.[51] Torpe frames the duty of good faith as a duty of reasonableness in performing contracts.[52] Because Utah law "does not recognize an independent tort cause of action based upon 'good faith and fair dealing' apart from the purposes and terms of an existing contract,"[53] there can be no of breach of duties not agreed upon by the parties in a contract.[54] And, in this case, as Aurora argues, under "the statute of frauds, this claim must arise out of a contract, obligation, or liability founded upon an instrument in writing, which Torpe cannot show."[55]

---

[49] Amended Complaint at 17.

[50] *Id.* at 19.

[51] *Id.*

[52] Opposition at 16. [53] *MacArthur v San Juan Cty.*, 416 F. Supp. 2d 1098, 1190 (D. Utah 2005).

[53] *MacArthur v San Juan Cty.*, 416 F. Supp. 2d 1098, 1190 (D. Utah 2005).

[54] *PDQ Lube Ctr., Inc. v. Huber,* 949 P.2d 792, 798 (Utah Ct. App. 1997).

[55] Motion at 16.

The Tenth Circuit held that one cannot invoke the covenant of good faith and fair dealing in order to impose an obligation outside of the relevant contract.[56] In *Heaton*, the Tenth Circuit affirmed the district court's dismissal of Heaton's breach of the covenant of good faith and fair dealing claim that was based on the lender's refusal to process a loan modification.[57] The court determined that Heaton's "claim was not predicated on some breach of the extant mortgage contract but instead upon his attempt to unilaterally impose new obligations on defendants based on their refusal to modify the mortgage contract.[58]

The same is true here. Because there was no contract concerning the manner in which Aurora would process Torpe's loan modification applications, and no duty of good faith and fair dealing or reasonableness can exist independent of a contract, Aurora did not breach these duties.

**ORDER**

IT IS HEREBY ORDERED that the Summary Judgment Motion[59] is GRANTED on all claims. The clerk is directed to close this case.

Dated August 6, 2014.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[56] *Heaton v. Am. Brokers Conduit*, 496 F. App'x 873, 876 (10th Cir. 2012) (citing *PDQ Lube Ctr., Inc.,* 949 P.2d at 798).

[57] *Id.*

[58] *Id.*

[59] Docket no. 51.